**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIP PRODUCTS, LLC, an Arizona limited liability company, | No. CV10-0998-PHX-DGC |
| Plaintiff/Counter-Defendant, | **ORDER** |
| vs. | |
| KONG COMPANY LLC, a Colorado limited liability company; MARGHERITA J. ARVANITES, an individual | |
| Defendants/Counter-Claimants. | |

**I.   Defendant's Motion to Dismiss.**

Defendant Kong Company, LLC moves to dismiss Plaintiff VIP Products, LLC's Third and Sixth claims. Doc. 43. Plaintiff opposes. 57. The motion has been fully briefed.[1] Docs. 43, 44, 57, 64. For the reasons that follow, the Court will deny the motion.

**A.   Plaintiff's Third Claim.**

The Third claim in Plaintiff's sealed First Amended Complaint alleges trademark infringement under 15 U.S.C. §§ 1114, 1116, 1117, and 1125. Doc. 14 at 8. Plaintiff alleges that it owns the TUFFY® trademark, that Defendant made false statements implying Defendant licensed the trademark from Plaintiff, that Defendant's intent behind the statements was to confuse or deceive consumers, and that Defendant's statements have

---

[1] Plaintiff's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

...

caused confusion in the marketplace. *Id.* at 7-8. As supporting facts, Plaintiff alleges that Defendant was present at two trade shows: the Global Pet Expo ("Pet Expo") and the H.H. Backer Associates' 22d Annual Pet Industry Spring Trade Show ("Backer Show"). *Id.* at 3-4. Plaintiff alleges that the shows were attended by large numbers of pet industry professionals, and that these professionals include "independent retailers, distributors, [and] mass-market buyers." *Id.* Plaintiff cites two instances of specific statements made by Defendant's representatives Minoru Ueda and Daniel Overbeck at the Pet Expo and Backer Show, respectively, where the representatives allegedly used the phrases "TUFFY," "TUFFY product," and "Tuffys" as part of false statements. *Id.* at 4-5. Plaintiff also alleges that other false statements were made at the Backer Show by Overbeck, and that other Defendant representatives made false statements at these shows and at other industry events. *Id.* at 4-5.

Defendant argues that the Third Claim should be dismissed under Rule 12(b)(6) because no facts were pled showing that Defendant used the TUFFY® trademark in connection with Defendant's own products or services in a deceitful or confusing manner – Defendant used the word "TUFFY" only in a "descriptive" sense. Doc. 44 at 8. Plaintiff responds that several of the facts pled show that Defendant falsely stated or implied that it obtained a license to sell TUFFY® toys.[2] Doc. 57 at 4. The Court agrees. Under Rule 12(b)(6), the factual allegations "'are taken as true and construed in the light most favorable to the nonmoving party.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted). Here, contrary to Defendant's assertions, Plaintiff has made sufficient allegations that, if true, would tend to show that Defendant used the TUFFY® trademark in connection with Defendant's own products in a deceitful or confusing manner. Therefore, the Court will not dismiss Plaintiff's Third Claim under Rule 12(b)(6).

---

[2] Plaintiff also argues that Defendant's "use in commerce" argument simply goes to Congress's power to regulate Defendant's conduct. Doc. 57 at 4-5. Although the phrase "use in commerce" is underlined twice in Defendant's memorandum with regard to the Third Claim (Doc. 44 at 8), Defendant never argues that its conduct fails the "use in commerce" test as to the Third Claim, and Defendant concedes as much in its reply (Doc. 64 at 6). Accordingly, the Court need not decide the "use in commerce" issue as to this claim.

### B. Plaintiff's Sixth Claim.

The Sixth claim in Plaintiff's sealed First Amended Complaint alleges false advertising under 15 U.S.C. § 1125(a) ("Lanham Act"). Doc. 14 at 11. Plaintiff alleges that Defendant repeatedly made false assertions to industry participants that Plaintiff "removed one layer of material from its TUFFY® toys because it had lost the patent." Doc. 14 ¶ 70. Plaintiff also claims that Defendant labeled its new "ballistic toy" as "tiger tested" even though the toy has never been tested with tigers as has Plaintiff's TUFFY® dog toy. *Id.* ¶ 71. Plaintiff further alleges that Defendant fraudulently stated that it licensed TUFFY® from Plaintiff. *Id.* ¶ 74. As a result of these actions, Plaintiff alleges that it has lost consumer sales. *Id*. ¶¶ 73, 74. Defendant argues that the Sixth Claim must be dismissed on two independent grounds: Rule 12(b)(6) and Rule 9(b).

#### 1. Rule 12(b)(6).

Defendant asserts three flaws: (1) the statements specifically alleged in the complaint do not constitute "commercial advertising"; (2) Plaintiff has not alleged that the "tiger tested" packaging was disseminated to the "relevant purchasing public" or that it actually deceived or had a tendency to deceive a substantial segment of the audience; and (3) Plaintiff fails to state which of Defendant's "services" were the subject of Defendant's false advertising statements in light of the complaint's allegation of false statements made "in connection with the commercial advertising and promotion of [Defendant's] services." Doc. 44 at 4-6.

Plaintiff responds to the first two arguments as follows. First, it asserts that under Ninth Circuit law the question of whether statements constitute "commercial advertising" is an issue of fact because the relevant inquiry is whether the statements were "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." Doc. 57 at 7 (quoting *Am. Traffic Solutions, Inc. v. Redflex Traffic Sys.*, 2010 U.S. Dist. LEXIS 47520 at *10 (D. Ariz. Apr. 22, 2010)). Second, citing *Time Warner Cable Inc. v. DirecTV, Inc.*, 497 F.3d 144 (2d Cir. 2007), Plaintiff argues that where product packaging is literally false, as Plaintiff alleged, consumer deception is presumed and need not be specifically alleged. Doc. 57 at 7. Plaintiff does not address Defendant's "services"

argument.

To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard requires sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The court may not assume that the plaintiff can prove facts different from those alleged in the complaint. *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted).

"The Lanham Act proscribes misrepresentation of another's goods or services in 'commercial advertising or promotion.'" *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999). Although the Lanham Act does not define the phrase "commercial advertising or promotion," the Ninth Circuit has adopted this definition:

> In order for representations to constitute "commercial advertising or promotion" . . . they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services[;] . . . [and] (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Coastal*, 173 F.3d at 735 (quoting *Gordon & Breach Sci. Publishers v. American Inst. of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994)). Moreover, "where the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the [Lanham] Act." *Coastal*, 173 F.3d at 735 (citation omitted).

Plaintiff's complaint alleges that the trade shows were attended by independent

- 4 -

retailers and mass-market buyers (Doc. 14 at 3-4), entities that may be considered "potential purchasers" in the market. There is no dispute that the speech or packaging at issue is commercial in nature, nor that Plaintiff and Defendant are competitors. The issues that remain, including the breadth of dissemination and Defendant's purpose, are fact-intensive inquiries not suitable for resolution in a motion to dismiss. *See Coastal*, 173 F.3d at 735 (noting that the trial court "submitted to the jury the factual question of the nature of the market"). Because the Sixth Claim alleges sufficient facts that, if true, state a plausible claim under the Lanham Act, it will not be dismissed under Rule 12(b)(6).

With regard to Defendant's "services" argument, it is true that the complaint does not specifically list which services were at issue, but the Court concludes that this does not render Plaintiff's complaint implausible given the other facts alleged. Defendant may determine the precise services at issue through discovery.

### 2. Rule 9(b).

Defendant also asserts that the Sixth Claim fails under Rule 9(b) for failing to plead with particularity Defendant's alleged "fraudulent misrepresentations." Doc. 44 at 6. Plaintiff responds that fraud is not an essential element to its false advertising claim, and therefore its pleading does not fall within the ambit of Rule 9(b). Doc. 57 at 10. Plaintiff also asserts that it meets the requirements of Rule 9(b). *Id.*

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003), a case cited by Defendant, the Ninth Circuit noted that express allegations of fraud must be pled with particularity under Rule 9(b) regardless of whether fraud is an essential element of a claim. *Id.* at 1103-04. The *Vess* court also observed that fraud can be alleged either expressly or by implication through allegations of facts that "necessarily" constitute fraud. *Id.* If fraud is averred, the allegations must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1106

(quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 2003)) (alteration in original). Allegations of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.'" *Id.* (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Plaintiff's Sixth Claim expressly alleges fraudulent misrepresentation. Doc. 14 ¶ 74. Therefore, the allegations are clearly subject to Rule 9(b) under *Vess*. The Court finds, however, that Plaintiff has alleged fraud with sufficient particularity. With regard to the "loss of patent" statements, Plaintiff alleges that the statements were made by Daniel Overbeck at the Backer Show, and the show was held between April 23 and 25, 2010 at the Baltimore Convention Center in Baltimore, Maryland. Doc. 14 at 4. With regard to false packaging, Plaintiff alleges that the packaging for the new ballistic toy presents the product as being "tiger tested" when, in fact, no testing with tigers has occurred. *Id.* ¶ 71. Plaintiff also alleges that, while at the Pet Expo held March 25 to 27, 2010 at the Orange County Convention Center in Orlando, Florida, Minoru Ueda stated or implied that Defendant licensed TUFFY® from Plaintiff. *Id.* ¶¶ 12, 17.

These allegations of misrepresentation are specific enough to give Defendant notice of the alleged misconduct. The Sixth Claim meets the requirements of Rule 9(b).

**II.   VIP's Motion to Dismiss.**

Plaintiff moves to dismiss Defendant's Fourth and Fifth Counterclaims (Doc. 56), and Defendant opposes (Doc. 66). The motion has been fully briefed.[3] Docs. 56, 66, 68. The Court will deny the motion.

Defendant's Fourth and Fifth Counterclaims allege violations of the Maryland Wiretapping and Electronic Surveillance Act ("MWESA"), Md. Code Ann., Courts and Judicial Proceedings ("MCACJP"), §§ 10-402(a)(1) and (a)(3), respectively. Doc. 41 at 16-18. The violations arise from Plaintiff allegedly hiring an investigator to record statements made by Defendant's representative, Daniel Overbeck, at the Backer Show in Baltimore,

---

[3] Plaintiff's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Maryland. *Id*. at 16. Plaintiff argues that Maryland is a "one party consent" state and that only Daniel Overbeck has standing to file a claim under the MWESA. Doc. 41. Defendant responds that Maryland is not a one-party consent state, and also argues that it has standing on account of Overbeck being its representative. Doc. 66; Doc. 41 ¶ 26.

The MWESA on its face permits recording of a conversation in a civil context where all parties consent. MCACJP § 10-402(c)(3). Plaintiff has cited no case law for the proposition that unilateral consent is also permissible. Moreover, the MWESA defines "person" to include a partnership or corporation. MCACJP § 10-401(5). Although Plaintiff is correct that the private right of action statute, MCACJP § 10-410(a), grants standing in a civil suit to "[a]ny person whose . . . oral . . . communication is intercepted," Plaintiff offers no persuasive support for the proposition that an entity principal would have no private right of action for interception of communications made by its agents. The Court will, therefore, deny Plaintiff's motion to dismiss.

## III.  Observation.

The arguments made by both parties in these motions are weak. Counsel should in the future assert only arguments truly supported by the facts and the law.

**IT IS ORDERED:**

1. Defendant's motion to dismiss (Doc. 43) is **denied**.

2. Plaintiff's motion to dismiss (Doc. 56) is **denied**.

3. The Court will set a Rule 16 scheduling conference by separate order.

DATED this 12th day of January, 2011.

*David G. Campbell*
David G. Campbell
United States District Judge